IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

EMPLOYERS MUTUAL CASUALTY COMPANY						PLAINTIFF

V.							CIVIL ACTION NO.: 1:08CV255-SA-DAS

NORMMURRAY SPRINGS BOTTLED
WATER CO., INC. AND TAMI T. STONESTREET,
AS ADMINISTRATRIX OF THE ESTATE OF
JOSEPH K. STONESTREET						DEFENDANTS

**MEMORANDUM OPINION**

Before the Court is Plaintiff's Renewed Motion for Summary Judgment [73], Motion In Limine Regarding Burden and Presentation of Proof [78], and Motion In Limine to Preclude Testimony [81]. After reviewing the motions, rules, and authorities, the Court finds as follows:

**I. BACKGROUND**

This case arises from a vehicular accident which resulted in the death of a passenger, Joseph K. Stonestreet, on October 6, 2007. Joseph Stonestreet was riding in the back seat of a vehicle owned and operated by Kenneth Newbegin. Newbegin was speeding, lost control of the vehicle, and hit a tree. Stonestreet was ejected from the vehicle and pronounced dead at the scene. Newbegin was insured with Progressive Insurance with a $25,000 per person limit. Stonestreet's heirs presented an under-insured motorist claim (UIM claim) under the Employers Mutual Casualty Company (EMCC) policy number 0E6-30-61 (the Policy) issued

to Stonestreet's employer, Normmurray Spring's Bottled Water Company, Inc. (Normmurray Springs). The Policy provides UIM coverage limited to $75,000. There are four vehicles scheduled on the Policy. While Stonestreet was an employee of Normmurray Springs at the time of his death, it is undisputed he was not traveling in a vehicle insured under the Policy and was not acting in the course and scope of his employment. EMCC instituted this action against Tami Stonestreet, as executrix of the Estate of Joseph K. Stonestreet, and the named insured under the Policy, Normmurray Springs. EMCC seeks a declaration that Joseph K. Stonestreet was not an insured under the Policy or the UM Act, and that EMCC is not liable to the Estate of Joseph K. Stonestreet for any amount. Defendants cross-claimed against EMCC seeking judicial estoppel, reformation of the Policy, and asserting negligence.

On March 25, 2010, this Court entered its Order [33] and separate Memorandum Opinion [34] denying without prejudice as premature Plaintiff's Motion for Summary Judgment, or in the Alternative, Motion for Partial Summary Judgment. The Court held in its previous opinion that Joseph Stonestreet was not riding in a covered vehicle; thus, he is not an insured under the Policy. The Court further found that under the UM Act and the Policy *as written*, Stonestreet is not an insured. However, the Court, pursuant to Federal Rule of Civil Procedure 56(f), denied EMCC's Motion for Summary Judgment as premature to allow Stonestreet time for discovery.

Shortly thereafter, Plaintiff filed a Motion for Reconsideration, or in the Alternative, Motion for Certification for Interlocutory Appeal and to Stay the Case Pending Interlocutory Appeal [36]. The Court granted in part and denied in part EMCC's Motion for Reconsideration [54]. The Court granted EMCC's Motion as to Defendants' judicial estoppel

cross-claim, finding that the doctrine of judicial estoppel was not applicable in this case. However, the Court denied the Motion concerning reformation of the Policy. The Court found that Stonestreet was entitled to additional discovery on the reformation issue. The Court left open the question of what legal effect reformation of the Policy would have. Instead, the Court held: "If the Court later determines the Policy should not be reformed, Stonestreet is not entitled to coverage. However, if the Court determines that the Policy should be reformed, the Court will determine the legal effect of reformation at that stage in the litigation."

On January 7, 2011, EMCC filed a Renewed Motion for Summary Judgment [73]. The parties have now completed the discovery process, and the discovery deadline has expired. As such, the issue of reformation of the Policy is now ripe for adjudication by the Court.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is warranted under Rule 56(c) when evidence reveals no genuine dispute regarding any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324, 106 S. Ct. 2548. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash.,

276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Id. In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." Id.

### III. ANALYSIS AND DISCUSSION

In this case, Defendants claim that there was a mutual mistake of fact justifying reformation of the Policy. Mississippi courts apply the general law of contracts to insurance cases including the rules governing reformation. Pride v. General Agents Insurance Co., 697 F. Supp. 1417, 1423 (N.D. Miss. 1988). The general rule in Mississippi is that reformation of a contract is justified only (1) if the mistake is a mutual one, or (2) where there is a mistake on the part of one party and fraud or inequitable conduct on the part of the other.[1] Allison v. Allison, 203 Miss. 15, 33 So. 2d 289 (1948). No fraud or inequitable conduct is alleged (or proven) in this case; thus, the Court focuses its attention on whether Defendants have proven the existence of a mutual mistake in the drafting of the contract.

As noted, an insurance contract may be reformed where it is shown to result from the mutual mistake of the parties in contracting for it. Brown v. Chapman, 809 So. 2d 772, 774

---

[1] There is an exception to this general rule. While ordinarily a contract may not be set aside for a unilateral mistake absent proof of fraud or other inequitable conduct on the part of the benefitting party, "'a reformation may be granted on the application of the grantor in a voluntary conveyance against the grantee, where the instrument does not express the donor's intent.'" Olive v. McNeal, 47 So. 3d 735, ¶ 12 (Miss. Ct. App. 2010) (quoting 76 C.J.S. Reformation of Instruments § 10 (2007)). Here, this exception is not applicable as there was not voluntary conveyance.

4

(Miss. Ct. App. 2002). The mistake must be in the drafting of the policy, not in the making of the agreement. Johnson v. Consol. Am. Life Ins. Co., 244 So. 2d 400, 402 (Miss. 1971). A mutual mistake is defined as "[a] mistake that is shared and relied on by both parties to a contract." BLACK'S LAW DICTIONARY (8th ed. 2004).

In order to reform a contract on the ground of mutual mistake, the evidence must be clear and convincing. Hartford Fire Ins. Co. v. Associates Capital Corp., 313 So. 2d 404, 408 (Miss.1975) (citing Lamar v. Lane, 154 So. 709 (Miss. 1934); St. Paul Fire & Marine Ins. Co. v. McQuaid, 75 So. 255 (Miss. 1917); Mosby v. Wall, 23 Miss. 81 (1851)). However, the Mississippi Supreme Court has also "even said that the proof must establish mutual mistake beyond a reasonable doubt." Hartford Fire Ins., 313 So. 2d at 408 (citing Rogers v. Clayton, 115 So. 106 (Miss. 1928); Progressive Bank of Summit v. McGehee, 107 So. 876 (Miss. 1926)); see also Pride, 697 F. Supp. at 1423 ("Under Mississippi law, the burden is on the party asserting a mistake to prove such mistake occurred beyond a reasonable doubt.").

In this case, Defendants have not met their burden of proving the existence of a mutual mistake in the *drafting* of the Policy. There is no dispute in this case that for a number of years prior to April 2006, the commercial automobile policies issued by EMCC for the Normmurray Springs account had as the named insured "Norma S. Thompson, d/b/a Normmurray Springs Bottled Water Company, Inc." It is also undisputed that, in April 2006, EMCC changed the named insured to "Normmurray Springs Bottled Water Company, Inc." at the request of Toby Tyler's – an EMCC insurance agent – Customer Service Representative, Leanne Lawrence. The following is an email correspondence regarding this change in the named insured:

> Subject: Normurray Spring's Bottled Water 0X6-30-61-07
> From: Leanne Lawrence
> Date: Thu, Apr 2006 10:40:18 -0500
> To: Carolyn.E.Nichols
>
> Carolyn:
>
> On the above referenced policy effective 4-12-06 please change the Named Insured from: Norma S. Thompson DBA: Normurray Spring's Bottled Water Co., Inc.
>
> To
>
> Normurray Spring's Bottled Water Company, Inc.
>
> Thanks!
> Leanne S. Lawrence
> Commercial Lines CSR
> Tyler, King & Ryder Insurance
> Post Office Box 707
> 308 North Jackson Street
> Kosciusko, MS 39090
> e-mail:
> phone: (662) 289-4821
> fax: (662) 289-3232

The named insured remained that way until May 15, 2009, well after the litigation in this case had ensued, when EMCC changed the named insured to "Tami T. Stonestreet, d/b/a Normurray Springs" at the request of Toby Tyler, who was acting on the written request of Tami Stonestreet.

Defendants assert that a mutual mistake exists because Stonestreet allegedly told EMCC to "substitute" her name for the name of "Norma S. Thompson." That is, Stonestreet testified in her deposition that she, on more than one occasion, informed Tyler that her name

should be listed on the Policy instead of Thompson's.[2]  Tyler, on the other hand, testified that he never had a request from Stonestreet to substitute Stonestreet's name for that of Norma Thompson as the named insured.

> In <u>Greer v. Higgins</u>, the Mississippi Supreme Court the court noted that,
>
> A mutual mistake [of fact] is one common to both parties to a contract, each laboring under the same misconception; more precisely, it is one common to both or all parties, wherein each labors under the same misconception respecting a material fact, the terms of the agreement, or the provisions of the written instrument designed to embody such agreement.

338 So. 2d 1233, 1236 (Miss. 1976).  Here, both parties were not "labor[ing] under the same misconception."  Defendants cannot show by clear and convincing evidence that there was a mistake that was "common to both parties."[3]  A "mistake is mutual if the contract has been written in terms which violate the understanding of both parties – that is, if it appears that both have done what neither intended." 66 AM. JUR. 2D REFORMATION OF INSTRUMENTS § 21.  "It is necessary that the mistake be mutual, and that both parties understood the contract as the complaint or petition alleges it ought to have been, and as in fact it was except for the mistake."  <u>Stevens v. Illinois Cent. R. Co.</u>, 234 F.2d 562, 564 n.4 (5th Cir. 1956).  In the present case, EMCC asserts that Stonestreet never requested that the insurance contract be

---

[2] Stonestreet asserts that if the Policy is reformed to contain her name, as opposed to Normmurray Springs, her son would then allegedly be covered under the Policy.

[3] The Court notes that, unlike mutual mistake, the remedy for a unilateral mistake that is unaccompanied by fraud or other inequitable conduct is rescission of the contract. <u>See</u> <u>Covington v. Griffin</u>, 19 So. 2d 805, ¶ 23 (Miss. Ct. App. 2009).  The Mississippi Supreme Court has stated the following regarding a unilateral mistake: "[E]quity will prevent an intolerable injustice such as where a party has gained an unconscionable advantage by mistake and the mistaken party is not grossly negligent." <u>Rotenberry v. Hooker</u>, 864 So. 2d 266, 271(Miss. 2003).  Here, the Defendants do not allege unilateral mistake, or request rescission of the contract.

made in her name, and the Defendants failed to produce any evidence showing that EMCC originally intended the contract to contain Stonestreet's name. As such, there is no indication of a common understanding between the parties. "A mistake cannot be mutual if the minds of the parties did not meet in a common intent." 66 AM. JUR. 2D REFORMATION OF INSTRUMENTS § 21.

This lack of understanding is fundamental to the Court's decision to grant summary judgment in the Plaintiff's favor. The first step in proving that reformation is justified by reason of a mutual mistake is that the parties reached an agreement in the first place. See RESTATEMENT (SECOND) OF CONTRACTS § 155 (noting that for reformation due to mutual mistake to apply, "there must have been some agreement between the parties prior to the writing"). As the Mississippi Supreme Court has made clear, the mistake must be in the *drafting* of the policy, not in the *making* of the agreement. Johnson, 244 So. 2d at 402. Here, the alleged "mistake" was in the making of the agreement, as there is no evidence that the parties – at the relevant time when Stonestreet contacted EMCC concerning the change of the named insured – ever agreed to the same term or that they ever had any common intent. Thus, the mistake is not one where both parties (i.e., mutually) agreed to one thing, and the draft of the policy stated another. The purpose of a suit for reformation "is not to make a new agreement, but to establish and perpetuate the true existing one." Stevens, 234 F.2d at 564 n.4. In other words,

> The purpose of an action for the reformation of a written instrument *is not to make a new agreement for the parties*, but rather, its purpose is to establish and perpetuate the actual agreement based upon the true intent of the parties. It has also been stated that preserving the original purpose and expectations of the parties with respect to one another is the goal of contract reformation.

> The court in recognizing the equity of reformation cannot make such a contract as it thinks the parties ought to have made or would have made, if better informed. For reformation, it is not what the parties would have intended if they had known better, but what they did intend at the time, informed as they were, and it is not enough to justify reformation that the court is satisfied that the parties would have come to a certain agreement had they been aware of the actual facts.

66 AM. JUR. 2D REFORMATION OF INSTRUMENTS § 5 (emphasis added); see also Equitable Mortg. Corp. v. Mortg. Guar. Ins. Corp., 791 F. Supp. 620, 623-24 (S.D. Miss. 1990).

Defendants point out that "[i]f a policy is made out in a different name from that of the person whom it was intended to insure, equity will correct the mistake . . . ." 2 COUCH ON INSURANCE § 27:30. While this is true, the rest of that sentence reads as follows: "provided that other elements essential to reformation in equity are present." Id. Here, the "other essential elements" to Defendants' claim are not present. Defendants have not only failed to meet their burden of proving mutual mistake, but their own evidence supports the conclusion that a mutual agreement between the parties was never reached.[4] Accordingly, the Court finds that there is no evidence of a common intent between the parties to justify reformation based on a mutual mistake.

Defendants also conclude that reformation is justified based on a "scrivener's error." Under Mississippi law, a scrivener error can be a basis for reformation. See In re Estate of Summerlin, 989 So. 2d 466, 480 (Miss. Ct. App. 2008). Defendants' scrivener's error

---

[4] Defendants rely almost entirely on the fact that while Stonestreet "testified that she repeatedly made the request" to substitute her name, Tyler "testified that he never had a request from Tami Stonestreet to substitute Tami in place of her mother." Instead, the name was changed to "Normmurray Springs Bottled Water Company, Inc." This dispute between the parties supports the fact that any alleged mistake that might exist in this case goes to the making of the agreement itself. Further, Defendants never allege there was any fraud, mistake, or inequitable conduct involved on the part of EMCC that would justify reformation based on a unilateral mistake.

argument fails for similar reasons as their mutual mistake argument. A "scrivener's error" is a "typographical error." BLACK'S LAW DICTIONARY (9th ed. 2006). Here, in the email correspondence requesting that the name of the insured be changed to "Normmurray Spring's Bottled Water Company, Inc.," there is no evidence of a typographical error. In other words, there is no evidence that the parties *intended* the email to say "Tami Stonestreet," but by a clerical or typographical error it instead stated "Normmurray Spring's." "[B]efore the reformation of a written contract is warranted, it must be shown that the scrivener's product reflects something other than what was understood by both parties. Under the 'doctrine of scrivener's error,' the mistake of a scrivener in drafting a document may be reformed based upon parol evidence, provided the evidence is clear, precise, convincing and of most satisfactory character that the mistake has occurred and that the mistake does not reflect the intent of the parties." 66 AM. JUR. 2D REFORMATION OF INSTRUMENTS § 19. As discussed above, Defendants' mutual mistake assertion fails due to the lack of common understanding between the parties in the making of the agreement. Defendants' scrivener's error argument necessarily suffers the same fate. Accordingly, because the Court finds that any "mistake" that may have occurred in this case was not in the *drafting* of the agreement, Plaintiff's Motion for Summary Judgment is granted.[5]

## IV. CONCLUSION

---

[5] Since the Court has determined that reformation based on mutual mistake is not warranted, the Court does not address what legal effect, if any, such reformation would have on the Policy regarding Joseph Stonestreet's automobile accident. Further, because the Court is granting Plaintiff's Renewed Motion for Summary Judgment, Plaintiff's Motions In Limine are moot.

For the reasons stated above, Plaintiff's Motion for Summary Judgment is GRANTED.

So ordered on this, the __14th__ day of March, 2011.

**/s/ Sharion Aycock**
**UNITED STATES DISTRICT JUDGE**